IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:92CR11 |
| | ) | |
| v. | ) | |
| | ) | |
| FERRIS T. VALENTINE, | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Like the proverbial "bad penny,"[1] Ferris T. Valentine keeps coming back, hoping to get his sentence reduced even though his earlier attempts to obtain similar relief failed.  I deny Valentine's most recent effort because, like the others, it is without merit.  This is true even though the government mistakenly stipulated that Valentine is entitled to relief under the recent retroactive amendments to the "crack" Guidelines.

## I.  BACKGROUND

It is helpful to look at the pertinent background of this case in three parts.  I proceed to that task next.

---

[1]"The expression was originally English and the unit of currency referred to was the shilling. Sir Walter Scott, in one of his early nineteenth-century novels, whereto: 'Bring back Darsie?  Little doubt of that.  The bad shilling is sure enough to come back again.'" *Phrases, Sayings and Idioms at The Phrase Finder*, www.phrases.org.uk/bulletin_board/4/messages/1231.html (last consulted July 9, 2008) (citing William & Mary Morris, *Morris Dictionary of Word and Phrase Origins* (HarperCollins, New York, 1977, 1988)).

### *The 1994 Sentence*

Valentine was convicted in 1994 of conspiracy to distribute 50 grams or more of "crack" cocaine.  (Filing 263.)   He was involved with a lot more than 50 grams.  In fact, I adopted the factual findings of the probation officer whose careful and conservative investigation found that Valentine was involved in the distribution of more than 5 kilos of "crack."  (PSR ¶ 66.)  This set his base offense level under the then-current Guidelines at 40.  (*Id.*)

Valentine received a 2-level increase for obstruction of justice because he attempted to escape.  (PSR ¶¶ 63, 70.)  Although he entered a guilty plea, he did not do so until the trial was about commence.  As a result, he received only a 2-level reduction for acceptance of responsibility.[2]  (PSR ¶ 71.)  With these findings, Valentine's total offense level became 40.

I next determined Valentine's criminal history score.  Valentine had an extensive criminal history, including drug dealing and weapons charges.  He had 12 criminal history points.  Therefore, his criminal history score was V.  (PSR ¶ 85.)

As a result of the foregoing, the Guidelines range (total offense level 40 and criminal history V) for imprisonment purposes was 360 months to life.  (PSR ¶ 104.)  Because Valentine cooperated with the government, I granted the government's motion for departure.  On March 28, 1994, I sentenced the defendant to 235 months in prison to be served concurrently with another federal sentence for drug trafficking imposed in Minnesota.  (Filing 263.)

---

[2]Given the obstruction of justice enhancement, he was lucky to get any reduction for acceptance of responsibility.  Normally, obstruction of justice precludes a finding that the defendant has accepted responsibility.

### *Valentine's Efforts in 1997 and 1999 to Get Relief Under Amendment 505*

After Valentine was sentenced, the Sentencing Commission amended the drug table to set a maximum base offense level of 38 for 1.5 kilos or more of "crack." U.S.S.G. *Appendix C*, Amendment 505, Vol. 1, at 415-417 (amendments to the *Guidelines Manual* effective up to Nov. 1, 1997). In other words, the highest base offense level one could get for drug distribution was reduced to 38. The amendment was effective November 1, 1994. *Id.* at 417. It was subsequently made retroactive. *See* U.S.S.G. § 1B1.10(c) (1995). Thus, Valentine's base offense level was reduced by 2, and his total offense level was reduced accordingly (from 40 to 38).

In 1997 and 1999, Valentine filed motions seeking relief under Amendment 505. (Filings 303 & 335.) I denied each of these motions. (Filings 310 & 338.) I did so because Amendment 505 made no difference in Valentine's case.

Amendment 505 worked no change in Valentine's case because it merely reduced his total offense level 2 points to level 38[3], and such a reduction made no difference under the sentencing table. That is, the Guidelines imprisonment range for a total offense level 38 and criminal history category V was 360 months to life, just like it was for total offense level 40 and criminal history category V. *See*, *e.g.,* U.S.S.G. Ch. 5, Pt. A, at 272 (1995) (Sentencing Table). That was the same range (360 months to life) that I found was applicable in March of 1994 when I departed downward and imposed a sentence of 235 months.

As I said in 1999, "even had the retroactive guideline amendment been in effect, I would have imposed the same sentence as I had previously imposed." (Filing 338, at 2.) Nothing had changed with adoption and retroactivity of Amendment 505.

---

[3]Under Amendment 505, the base offense level became 38 (rather than 40), and with a 2-point enhancement for obstruction of justice and 2-point decrease for acceptance of responsibility, Valentine's total offense level was 38, down from 40.

### *Valentine's Motions Filed in 2008 Regarding Amendments 706 and 713*

Among other things, Amendment 706, effective November 1, 2007, increased the quantity of "crack" necessary to trigger a level 38 from 1.5 kilos to 4.5 kilos. *See* U.S.S.G. *Supplement to Appendix C*, at 226 (amendments to the *Guidelines Manual* effective November 1, 2004, through November 1, 2007); U.S.S.G. § 2D1.1(c)(1) (2007) (Drug Table; Level 38). Note that Amendment 706 could not help Valentine because in 1994, I had found that Valentine was involved with more than 5 kilos of crack.

Amendment 706 was made retroactive effective March 3, 2008. *See* U.S.S.G. *Supplement to the 2007 <u>Guidelines Manual</u>*, Amendment 713, at 80-81 (May 1, 2008). Also, the Guidelines that govern how retroactive amendments are to be applied (U.S.S.G. § 1B1.10) were modified at the same time. *See* U.S.S.G. *Supplement to the 2007 <u>Guidelines Manual</u>*, Amendment 712, at 72-80 (May 1, 2008). This change was also effective March 3, 2008. *Id.* at 80.

At first through a pro se filing, and thereafter by a motion made by an Assistant Federal Public Defender, Valentine sought relief under these recent amended and retroactive "crack" cocaine Guidelines. (Filings 460 & 466.) Pursuant to procedures this court adopted to deal with the influx of similar motions, I ordered the probation officer to prepare and submit a "Retroactive Sentencing Worksheet," and I ordered the lawyers to confer and reach a stipulation or advise that they were unable to stipulate. (Filing 464.)

On March 26, 2008, Valentine and the government, through their counsel, filed a stipulation. (Filing 468.) The stipulation (erroneously) recited that Valentine's Guideline range had been reduced from a range of 360 months to life in prison to a range of 324 months to 405 months of imprisonment. Accordingly, the parties agreed that a proportionate reduction of the previously imposed departure sentence (235

months) should be made.   That is, the parties stipulated that a new sentence of 211 months should be imposed.

On April 14, 2008, I received the retroactivity worksheet from our very competent probation officer. It indicated that Valentine was not entitled to any reduction because his imprisonment range (360 months to life) under the amended Guidelines was the same as it had always been.  Since Valentine was involved with more than 4.5 kilos of crack, these most recent amendments did not reduce the range of imprisonment (360 months to life) for people like Valentine whose total offense level was 38[4] and whose criminal history score was V.

Perplexed by the parties' stipulation, the probation officer conferred with the Assistant Federal Public Defender in an effort to determine the reasoning behind it. Counsel advised the probation officer that the parties erroneously assumed that Valentine's criminal history was IV rather than V.  At a level 38, and criminal history category IV, the imprisonment range would have been 324 to 405 months, the range set forth in the stipulation. In short, the stipulation was erroneous, apparently because the parties relied upon the wrong criminal history number.

The probation officer also reported the following regarding Valentine's relatively poor adjustment in prison:

> Earned GED in 1999, completed drug education in 1999.  In 2007, defendant disciplined for refusing work/program assignment.  In 2006, defendant refused work program/assignment on six separate occasions. In 2005, defendant disciplined for refusing work program/assignment. In 2005, refused work program/assignment; in 2005, possessed a dangerous weapon and sanctioned by having to spend 28 days in

---

[4]Remember that Valentine's total offense level of 40 was reduced to 38 by virtue of Amendment 505 after Valentine's original sentence. Nonetheless, the range of imprisonment (360 months to life) remained the same.

segregated housing unit (SHU); in 2005, possessed intoxicants on two separate occasions. In 2004, disciplined for possessing intoxicants. In 2002, defendant admitted to assaulting another inmate and sanctioned by losing 27 days good time and having to spend 30 days on disciplinary segregation. Possessed intoxicants in 2002 on two occasions. Possessed intoxicants in 2001 on two occasions. Also disciplined for fighting with another inmate in 2001. In 2000 disciplined for counterfeiting or forging document and possessing intoxicants. In 1998, disciplined for possessing a dangerous weapon. In 1997, disciplined for assaulting without serious injury; in 1997, possessed a dangerous weapon. In 1996, possessed intoxicants on two occasions.

Retroactive Sentencing Worksheet at 2.

After I received the retroactive worksheet and the probation officer's advice about his conference with counsel, I issued a show cause order to both sides. (Filing 469.) Noting that the probation officer had advised that Valentine was not entitled to relief under the recent amendments and that Valentine's adjustment in prison had not been good, I required the parties to show cause why I should not deny Valentine's motions.

The government did not respond. The government therefore failed to show cause why I should not deny the defendant's motions even though the government previously stipulated that I should accord him some relief. The defendant, through his very able lawyer, responded. (Filing 476). Valentine maintains that he is entitled to relief. I next explain why that is not so.

## II. ANALYSIS

There are three independent reasons why Valentine is not entitled to relief. Briefly, I explain those reasons next.

First, under the most recent amendments to the "crack" Guidelines (Amendments 706 and 713), Valentine's sentencing range (360 to life) has not been reduced, and therefore, U.S.S.G. § 1B1.10(a)(2)(B) (2008) bars me from granting Valentine relief. That section provides that a "reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if . . . an amendment listed in subsection (c) does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2)(B) (2008), *reprinted in Supplement to the 2007 Guidelines Manual*, Amendment 712, at 75 (May 1, 2008).

Valentine argues that the "Sentencing Commission has offered no explanation for not reducing the base offense level for quantities of more than 4.5 kilograms of crack cocaine." (Filing 476 at CM/ECF p. 5.)   In other words, Valentine argues that the Sentencing Commission, which raised the triggering amount for a base offense level of 38 from 1.5 kilograms to 4.5 kilograms of "crack," should have been even more lenient.[5]   He goes on to argue that I should apply *Kimbrough v. United States*, 128 S. Ct. 558 (2007) (federal district court does not abuse its discretion by concluding that Sentencing Guidelines' crack cocaine/powder cocaine disparity, which treats every gram of crack cocaine as equivalent to greater quantity of powder cocaine, yields sentence "greater than necessary" to achieve sentencing statute's objectives in particular case).   Valentine wants me to do for him what the Sentencing Commission refused to do.   I am not persuaded.

Initially, and as a statutory matter, 18 U.S.C. § 3582(c)(2) does not allow me to reduce Valentine's sentence.   It explicitly provides that a "court may *not* modify

---

[5]Valentine argues that the Sentencing Commission should have bumped the 1.5-kilogram threshold for a level 38 to 6 kilograms rather than only increasing it from 1.5 kilograms to 4.5 kilograms.   (Filing 476 at CM/ECF p. 7.)   I do not understand why Valentine picked this number (6 kilograms), as opposed to some other.

a term of imprisonment once it has been imposed except that . . . [a court may reduce a sentence] in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . ." *Id.* (emphasis added). As just noted, Amendment 706 did not lower Valentine's sentencing range. As a result, section 3582(c)(2) stands as an insuperable *statutory* bar to relief.

Still further, nothing in *Kimbrough* even hints that the Supreme Court intended to authorize judges to disregard the plain words of section 3582(c)(2). I am unwilling to extend *Kimbrough* and the other recent sentencing decisions of the Supreme Court to "crack" reduction cases without precedent from the Court of Appeals or the Supreme Court. *See, e.g., United States v. Perez*, No. 4:05CR3010, 2008 WL 2309497, at *1 (D. Neb. June 4, 2008) (in a "crack" reduction case, stating "it is not up to me to create new law by expanding the scope of those opinions to cover these types of cases. If the defendant thinks *Gall* and *Kimbrough* and the others apply, he should take his case to the Court of Appeals and the Supreme Court") (citation & footnote omitted).

Second, Amendment 505 affords Valentine no relief for the same reasons that Amendments 706 and 713 are of no help to him. While it is true that Amendment 505 reduced Valentine's base offense level by 2, and thus his total offense level fell by the same number, his sentencing range remained the same (360 to life). Thus, under both the Guidelines (U.S.S.G. § 1B1.10(a)(2)(B)) and the statute (18 U.S.C. § 3582(c)(2)), there is no authority to reduce Valentine's sentence under Amendment 505.

Still further, I have twice denied Valentine relief under Amendment 505, and the "law of the case" doctrine precludes Valentine from seeking a third bite of the apple. *United States v. Washington*, 197 F.3d 1214, 1216 (8th Cir. 1999) ("Under the law of the case doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'")

(quotation & citations omitted).  As the facts have not changed since my earlier denials, and those earlier decisions were not clearly erroneous or manifestly unjust, I have no hesitancy  in applying the law of the case doctrine against Valentine.  *See*, *e.g.*, *United States v. Mitchell*, 528 F.3d 1034, 2008 WL 2345033 at *5 (8th Cir., June 11, 2008) ("We will adhere to a decision in a prior appeal of the same case unless a party introduces evidence that is substantially different, or the prior decision is clearly erroneous and manifestly unjust.") (citing, among others, *United States v. Washington*).

Third, given Valentine's poor adjustment in prison, and his extensive criminal history, even if I had the discretion to reduce his sentence, I would not do so.  The safety of the public strongly counsels against giving Valentine any relief beyond the big break he already received for cooperating with the government.  *See*, *e.g.*, U.S.S.G. § 1B1.10, Commentary n.1(B)(ii)&(iii) (2008) (application note regarding public safety considerations and post-sentencing conduct), *reprinted in Supplement to the 2007 Guidelines Manual*, Amendment 712, at 76-77 (May 1, 2008).  While Valentine tries to explain away his problems in prison (filing 476 at CM/ECF pp. 11-14), his explanations (such as a cell mate told the hearing officer that the "shank" belonged to the cell mate) fail to move me, just as those excuses were obviously unconvincing to the prison authorities.  His explanations are also incomplete.  For example, Valentine makes no effort to explain away the repeated discipline he received for abuse of intoxicants in 1996 (2 occasions), in 2000, in 2001 (two occasions), in 2002 (two occasions), in 2004, and in 2005 (two occasions).

Accordingly,

IT IS ORDERED that Valentine's motions for reduction of sentence due to the amended and retroactive "crack" Guidelines (filings 460 & 466) and the related stipulation (filing 468) are denied.  My judicial assistant shall file the "Retroactive Sentencing Worksheet" in the CM/ECF court file.

July 9, 2008.            BY THE COURT:

s/ *Richard G. Kopf*
United States District Judge